DECISION
Richard Lampley filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and which compels the commission to enter a new order granting the compensation.
In accord with Loc.R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which includes a recommendation that we deny the requested relief. (Attached as Appendix A.)
Counsel for the Mr. Lampley has filed objections to the magistrate's decision. Counsel for General Motors Corporation ("GM") has filed a memorandum in response. The case is now before the court for a full, independent review.
Richard Lampley was working as a spot welder when he fell. He injured his neck, left wrist, left shoulder and lower back. He also suffered a concussion. His workers' compensation claim has also been allowed for "dysthymia," but disallowed for "major depression."
Mr. Lampley filed two applications for PTD compensation — one in 1989 and one in 1995. Before these applications for PTD compensation were fully resolved, Mr. Lampley filed an application for permanent partial disability ("PPD"). He received an award for a 65 percent permanent partial disability.
Prior to the award for PPD, Mr. Lampley was examined on behalf of GM by Daniel Schubert, M.D., Ph.D. Dr. Schubert found Mr. Lampley to suffer from no psychiatric condition, including dysthymia. Dr. Schubert's report stands in stark contrast to a subsequent report provided by commission specialist Robert L. Byrnes, Ph.D. Dr. Byrnes found a 60 percent whole person impairment based upon Mr. Lampley's dysthymia disorder.
When a staff hearing officer finally addressed the merits of Mr. Lampley's application for PTD compensation, the hearing officer relied upon Dr. Schubert's report in denying PTD compensation. In this mandamus action, counsel contests the evidentiary value of the report and hence the validity of the finding about Mr. Lampley's entitlement to PTD compensation.
Dr. Schubert and Mr. Lampley did not get off to a good start because Mr. Lampley showed up an hour late for his appointment. Mr. Lampley compounded the problem by failing to apologize to Dr. Schubert for being late.
Dr. Schubert found that Mr. Lampley did not meet the criteria for dysthymia because "he does not have the following changes related to depression; eating, sleeping, energy, concentration, feelings of hopelessness." At the same time, Dr. Schubert noted that Mr. Lampley "talks at great length and wanders around verbally, only partly in response to questions." This wandering around verbally would imply a lack of concentration. Dr. Schubert also described Mr. Lampley as being "hard to redirect and talks about things unrelated to questions."
Despite finding that Mr. Lampley does not suffer in his sleeping patterns, Dr. Schubert reported a comment from Mr. Lampley that Mr. Lampley "hears gunshots all night."
Dr. Schubert noted that Mr. Lampley had been seeing a psychiatrist for four to five years, and receiving Prozac and Xanax for that time, but expressed no surprise about the treatment or medication despite claiming that Mr. Lampley did not meet "criteria for any psychiatric condition and diagnosis at this time."
Dr. Schubert claimed that Mr. Lampley did not suffer from feelings of hopelessness but noted that Mr. Lampley stated during the interview, "I don't know why I'm alive" and "it hurts me that I don't care for my family. My wife said I was doing a good job but I don't think so."
Dr. Schubert refused to diagnose Mr. Lampley as having dysthymic disorder based upon the second section of the set of criteria set forth in DSM-IV. The section reads:
When depressed, the patient has 2 or more of:
— Appetite decreased or increased
— Sleep decreased or increased
— Fatigue or low energy
— Poor self-image
— Reduced concentration or indecisiveness
— Feels hopeless
As indicated above, Dr. Schubert expressly noted traits and comments which demonstrated poor self-image, feelings of hopelessness and reduced concentration. The comment about hearing gunshots all night could indicate a reduction in sleep. In short, Dr. Schubert refused to accept the fact that Mr. Lampley met the criteria for dysthymic disorder. Dr. Schubert's report simply could not serve as the basis for refusing to grant PTD compensation.
We, therefore, sustain the objections to the magistrate's decision. We adopt the findings of fact contained in the magistrate's decision but augment those facts with our own findings set forth above. We do not adopt the conclusions of law contained in the magistrate's decision.
Based upon our findings, we grant a limited writ of mandamus compelling the commission to vacate its order denying PTD compensation for Mr. Lampley and compelling the commission to conduct further proceedings to determine whether or not Mr. Lampley is entitled to PTD compensation without consideration of Dr. Schubert's report.
We do not find relief under State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315 to be appropriate at this time but feel that the commission should address the merits of Mr. Lampley's application again.
Objections sustained; limited writ granted.
KLATT and BOWMAN, JJ., concur.